UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY C. WISE,

        Plaintiff,                      CIVIL ACTION NO. 07-15479

      v.                               DISTRICT JUDGE GEORGE CARAM STEEH

ANDREW RYAN WILBURN,         MAGISTRATE JUDGE VIRGINIA M. MORGAN
Argentine Police Officer, and
TERRY VANKEUREN,
Argentine Police Chief,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on the motion for Summary Judgment filed by defendants Wilburn and VanKeuren (#109). Plaintiff filed a response (# 111). For the reasons set forth in this Report, it is recommended that the motion be granted and these defendants dismissed.

Plaintiff brought this action *in pro per*. In December, 2008, the undersigned entered a Report & Recommendation to grant partial summary judgment. In January, 2009, Judge Steeh reviewed the Report & Recommendation and dismissed all claims against Wilburn and Vankeuren except for Count IV, "Violation of State and Federal Laws" which alleged deprivation of liberty under color of state law (violation of 42 U.S.C. §1983), and violation of

Michigan Mental Health Code.[1] Defendants now seek dismissal of that count on the grounds of qualified immunity under federal law, and that they have immunity under the Michigan Mental Health Code. Oral argument was not held on the motion. For the reasons discussed in this Report, it is recommended that the motion be granted.

### A. Standard of Review

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-

---

[1] Defendant Wilburn and VanKeuren are not alleged to be involved in the remaining counts: Violation of the Michigan Mental Health Code (Count II),Wrongful Mental Health Commitment (Count V), False Imprisonment and Intentional Infliction of Emotional Distress (Count 6), Excessive Medication with Anti-Psychotic Drugs/Assault and Battery (Count 7), Violation of Industry Standards by Using Major Tranquilizers and by not Obtaining Informed Consent (Count 8), Malicious Prosecution (Count 9), Excessive and Unnecessary Institutionalization (Count 10), Further Violation of State and Federal Laws, the State Mental Health Code and Due Process Violation and 42 U.S.C. § 1983 Civil Action for Deprivation of Rights (Count 11).

moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).  Summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery.  Oatman v. Potter, 92 Fed.Appx. 133, 137, 2004 WL 68537, 3 (C.A.6,2004), citing White's Landing Fisheries, Inc. v. Buchholzer, 29 F.3d 229, 231-32 (6th Cir.1994).

### B. Factual Background

The facts, more fully developed here, are set forth in the first Report & Recommendation, previously reviewed by the district court.  The case arose from an incident at plaintiff's residence in Argentine Township, Michigan.  On March 10, 2005, Argentine Township Police received a call requesting assistance.  The call came from Callie Kornowski, a neighbor, whose husband was inside Mr. Wise's home.  Plaintiff was reported to be acting in a bizarre way, talking about death, God, and making very disturbing statements.  The caller asked police to check on plaintiff's welfare.  Officers Wilburn and Russ, Township police officers in full uniform, were dispatched to plaintiff's residence at 11183 Rolston Rd.  (Complaint, Ex. A)  When they arrived, the officers approached the door and knocked.  They heard the door lock from inside.  (#109, Ex. A 7-8; Ex. B 7-8; Ex. C 59-60)[2]  Plaintiff shouted at them from a front window: "We don't need you here! . . I'll talk to you from here [inside the front window] but stay away from the window. Everything is fine."  The officers were concerned about the aggressive behavior and attitude

---

[2]Ex A is Wilburn's deposition; Ex. B is Russ's Deposition; and Ex. C is Plaintiff's deposition testimony.

taken by plaintiff. (Ex. A 8-9; B 7-10; C 60-61) Chief Vankeuren also arrived. Ofc. Doug Fulton of Linden Township was also called to the scene.

In response to officers' questions, Wise indicated that there were a lot of people in the house but stated they were all okay. Plaintiff told Wilburn that God was going to have his wrath and he did not want the individuals inside to leave his house because the only safe place was inside his house. (Ex. A, 10, Ex. C 57-59) Because Wilburn could not see the people inside, he remained concerned for their safety. After further discussion, some of the officers were able to gain entrance to the house, but Sgt. Russ, the only female officer, was not permitted by Mr. Wise to enter.[3] Plaintiff also whistled for dogs to come and Ofc. Wilburn states that plaintiff advised him to have Russ go back to her vehicle and that he was going to whistle and 100 dogs would come and maul her. Plaintiff admits he whistled, thinking maybe dogs would come but denies that he said they would maul Ofc. Russ.

Upon entry, the officers noted that plaintiff's wife and their three young children were in the house. The officers observed that the family looked scared. Plaintiff was acting excited one minute, then calm, then excited again. (Ex. A 12-13; Ex. D 30 (Mrs. Wise's deposition); Ex. E 7, Ex. F 9) The officers were told that he was upset about an allegedly deceptive ad from a Ford dealership. (Ex. B)

Also on March 10, 2005, the police department received additional information from Waterford Police where an office manager at a law firm had called and reported receiving a

---

[3]Officer Wilburn testified that plaintiff told him not to trust Russ, that he should not turn his back on her, and that plaintiff directed him to take out his gun and hold it to Russ's head and hold her hostage. (Ex. A 8-10; Ex. B 9-10) Plaintiff denies saying this. (Ex. C 61-62)

strong call that day from plaintiff who was a client of the firm.  Plaintiff told the office manager to get away from the attorney Patrick Bagley because Bagley was working for the devil and plaintiff was working for God and was to take care of people connected to the devil.  (Waterford police report attached to Hurley Medical Ctr Ex. List, #74, Ex. K)  The office manager also spoke with Mrs. Wise that day and Mrs. Wise told her that she was not okay and was afraid. (Ex. D 12-14)

In conversation with Ofc. Russ later, Mrs. Wise indicated that plaintiff had held her against her will, and that although the children could leave she could not.  (Ex. B 17-18)  Mr. Wise told the police that he had been contacted by the Lord and that he was to follow the Lord's instruction and take care the problem(s).  Police found that plaintiff had a weapon in the house--a fully loaded semi-automatic hand gun in the bathroom.  Bullets for a second gun, a .357 Magnum, were found in a kitchen drawer and the weapon was supposedly in the garage although officers could not then locate it. (Ex. A 13-14; Ex. B 19; Ex. E 9-11)

Sgt. Russ saw Brett Kornowski, plaintiff's neighbor who had been inside the home, come running out.  He told Russ that plaintiff appeared very unstable.  This was confirmed by Jon Munger, who had spoken with plaintiff earlier that day.  (Ex. B 14-17)

The officers determined that Wise's judgment was impaired and that he was in need of a mental health evaluation.  They also concluded that he posed a potential threat to himself and/or others.  (Ex. E 9-14, Ex. A 16-17, Ex. B 19, Ex. F 10-13)  An ambulance was called and plaintiff was transported to Hurley Hospital in handcuffs for a mental health evaluation.  No criminal charges were filed.

At the hospital, Officer Wilburn completed a petition for hospitalization (pursuant the Michigan Mental Health Code).  (Complaint Ex. B)  Ofc. Wilburn reported that he heard Mr. Wise say that he wanted to take Sgt. Russ hostage and have dogs eat her.  He also reported that Wise was acting aggressively toward his family and felt that people were in danger of their lives.  Id.  A physician's clinical certificate was completed by Dr. Diann Krywko, M.D., who determined that plaintiff was mentally ill with acute homicidal ideation.  According to plaintiff's wife, plaintiff had essentially held his family hostage for two days and was walking around the house with a loaded gun.  He was obsessed with religion.  Inpatient psychiatric treatment was recommended.  (Complaint Ex. C)

On March 11, 2005, Sgt. Russ returned to plaintiff's residence and recovered the other handgun and additional ammunition. (Ex. B 25-29)

A mental health hearing was held for plaintiff on March 17, 2005, before Judge Clayton Preisel in Flint.  (Complaint Ex. D)  Plaintiff was represented by an attorney.  Defendant Dr. Cuthbertson testified.  He is a psychiatrist who is vice-president of Medical Affairs for Genesee County Community Mental Health Services.  Dr. Cuthbertson diagnosed plaintiff as having a traumatic brain injury and also suffering from a bipolar affective disorder, Type I, manic/severe.  (Ex. D, p. 5)  Dr. Cuthbertson had examined plaintiff.  Plaintiff suffers from a closed head injury as a result of a car accident and during this time, his thought processes got to the point where he needed treatment.  (P 8-9)  Based on the results of his examination as well as the events of March 10 and a phone call from a psychologist who advised that plaintiff was threatening people within the community, Dr. Cuthbertson opined that in-patient hospitalization was warranted.

Plaintiff agreed to take Lithium and improved dramatically shortly thereafter. (P 6) Plaintiff was represented by counsel at the hearing and in addition, had a temporary guardian who was also a lawyer, Jon Munger. Mr. Munger testified that he had spoken with plaintiff and Mrs. Wise many times over the previous week. Mr. Wise did not dispute that he was a person in need of treatment but did not believe that he ever held his family hostage.

### C. Discussion

#### 1. Qualified Immunity:

Defendants seek dismissal on the grounds of qualified immunity. Whether qualified immunity applies to an official's actions is a question of law that this court reviews *de novo*. *Virgili v. Gilbert,* 272 F.3d 391, 392 (6th Cir.2001). Qualified immunity "is conceptually distinct from the merits of the plaintiff's claim." *Mitchell v. Forsyth,* 472 U.S. 511, 527, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). It is "an entitlement not to be forced to litigate the consequences of official conduct." *Id.* "The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526, 105 S.Ct. 2806. Qualified immunity is an affirmative defense that, once asserted, shifts the burden of proof to the plaintiff to show that the defendant is not entitled to qualified immunity. *Sheets v. Mullins,* 287 F.3d 581, 586 (6th Cir. 2002).

In defining this entitlement, the Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct.

2727, 73 L.Ed.2d 396 (1982).  In 2001, the Court established a two-part test for determining whether qualified immunity applies.  *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  In *Fisher v. Harden* 398 F.3d 837, 841 -842 (C.A.6,2005), this circuit held that a court must consider "this threshold question: taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Id.*  If the facts, as alleged by the claimant, fail to establish a violation, then immunity applies.  On the other hand, if the alleged facts sufficiently demonstrate a constitutional violation, a court must determine "whether the right was clearly established."  *Id.*

However, subsequently, the circuit recognized that the questions do not have to be decided in that precise order.  Under *Saucier*, district courts evaluating qualified-immunity motions were required to perform the two-step inquiry to determine whether a defendant was protected by qualified immunity.  *Saucier,* 533 U.S. at 201.  The Supreme Court recently retreated from *Saucier's* requirement and now allows the lower courts to decide the questions in either order.  *Pearson v. Callahan,* __ U.S. __, 129 S.Ct. 808, 821, 172 L.Ed.2d 565, __ (2009).  *Pearson* granted lower courts the discretion to determine the order in which to conduct the qualified-immunity analysis.  But, in any event, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity.  *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir.2006), and the application of qualified immunity is determined on a "fact-specific, case-by-case basis." *Armstrong v. City of Melvindale*, 432 F.3d 695, 698-99 (6th Cir. 2006).

**2.  Section 1983 Liability**

In order to prevail on a civil rights claim under 42 U.S.C. § 1983, plaintiff must establish that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *Smoak v. Hall,* 460 F.3d 768, 777 (6th Cir.2006). In *Ziegler v. Aukerman* 512 F.3d 777, 781 (6th Cir. 2008), the court noted a third element, i.e. that plaintiff must demonstrate: (1) a deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under color of state law; (3) occurring without due process of law. 42 U.S.C. § 1983 citing *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 995 (6th Cir.1994). In this case, plaintiff alleges a violation of his due process rights under the Fourth, Fifth, Sixth, and Fourteenth amendments to the Constitution. (Response, pp. 9-11) The Fifth and Sixth Amendment issues are not discussed and appear to have no relevance to the circumstances. Therefore, the discussion will be limited to the circumstances of the seizure in the context of the Fourth Amendment and Fourteenth Amendment.

### 3. Fourth Amendment

The Fourth Amendment grants citizens the right to be free from unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Gardenhire v. Schubert,* 205 F.3d 303, 312-13 (6th Cir. 2000). While a warrant issued upon probable cause is generally required for a search or seizure to be deemed "reasonable," the Supreme Court has recognized particularized exceptions to the main rule, when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Skinner v. Ry. Labor Executives' Ass'n,,* 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *Everson v. Leis* 556 F.3d 484, 497 (6th Cir. 2009). There is no question that defendants "seized" plaintiff

within the meaning of the Fourth Amendment when they handcuffed him and caused him to be transported to the psychiatric facility. The Fourth Amendment generally applies in the civil setting to seizures of individuals for psychiatric evaluations or involuntary confinement. *Graham v. Connor*, 490 U.S. 386 (1989)(seizure triggering the Fourth Amendment's protections occurs ... when government actors have, 'by means of physical force or show of authority, ... in some way restrained the liberty of a citizen)*; Monday v. Oullette*, 118 F.3d 1099, 1102-04 (6th Cir. 1997). Application of the Fourth Amendment implies an "objective reasonableness" standard which governs any time a government official seizes a free citizen with the purpose of potentially creating an involuntary custodial relationship with the State, because the Fourth Amendment's protection against unreasonable seizures "seems primarily directed to the initial act of restraining an individual's liberty." *Valencia v. Wiggins,* 981 F.2d 1440, 1444 (5th Cir. 1993); see also *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir.2001.)(substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment than under the 'objective reasonableness' test [of the Fourth Amendment]).

The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others. *See Monday v. Oullette*, 118 F.3d 1009 (6th Cir. 1997); *Glass v. Mayas*, 984 F.2d 55, 58 (2nd Cir. 1993); *Sherman v. Four County Counseling Ctr.,* 987 F.2d 397, 401 (7th Cir. 1993); *Gooden v. Howard County, Md.,* 954 F.2d 960, 967-68 (4th Cir. 1992)(en banc); *Villanova v. Abrams,* 972 F.2d 792, 795 (7th Cir. 1992); *cf. Rex v. Teeples,* 753 F.2d 840, 842-43 (10th Cir.1985)(holding that detainment for psychological evaluation must rest upon probable cause,

but characterizing right as due process claim). If a dangerous mental condition is analogized to the role of criminal activity in traditional Fourth Amendment analysis, a showing of probable cause in the mental health seizure context requires only a "probability or substantial chance" of dangerous behavior, not an actual showing of such behavior. *See Illinois v. Gates,* 462 U.S. 213, 245 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983). Just as actual innocence will not render an arrest invalid if it is based on then-existing probable cause that criminal activity is occurring, *see Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir. 1988), a mental health seizure can rest upon probable cause even when the person seized does not actually suffer from a dangerous mental condition. Because "probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts," *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329, courts evaluate the existence of probable cause from the perspective of a reasonable and objective person in the position of the seizing official. *See Criss,* 867 F.2d at 262-63.

  In this case, defendants are entitled to qualified immunity. Here, defendants had probable cause to believe that plaintiff was holding individuals against their will and creating a high risk of danger to them. He had weapons, a neighbor and others had called, and he was hostile and aggressive to the officers. In *Monday v. Oullette*, 118 F.3d 1009 (6th Cir. 1997), the court held that it was reasonable for the officer to conclude that, given his information and the great potential harm at issue, an unacceptable risk remained that plaintiff was acting in a way to attain his apparently declared goal of committing suicide. *See Villanova v. Abrams,* 972 F.2d 792, 795-6 (7th Cir.1992)(existence of probable cause to impose mental health commitment turns upon whether the magnitude of the potential harm and the probability of that harm

outweigh the cost of confinement to the individual); *see also Sherman v. Four County Counseling Ctr.,* 987 F.2d 397, 401-02 (7th Cir. 1993)(probable cause supported involuntary commitment, given plaintiff's multiple threats against others and odd public behavior). Thus, qualified immunity will protect officers who seize a plaintiff for involuntary mental exam even on the basis of an incorrect belief that violent sounds and screams in apartment complex were emanating from the apartment. *Gooden v. Howard County ,* 954 F.2d 960, 966-69 (4th Cir. 1992). Qualified immunity will protect an officer who detained plaintiff for emergency evaluation, even though he knew that her vital signs were normal and admitted that he had no idea whether she had overdosed, because officer knew of plaintiff's recent hospitalization, plaintiff became angry when questioned, and plaintiff showed officer a partially empty bottle of pills. *Harris v. Pirch,* 677 F.2d 681, 689 (8th Cir.1982). In the instant case, a party who claimed personal knowledge advised the officers of behavior indicative of mental instability. Officers observed persons in the house, weapons, threats to a female officer, and other factors. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* Courts assess "reasonableness" from the perspective of the reasonable officer on the scene, rather than with the benefit of hindsight. *See id.* Because the "reasonableness" test is an objective one, the intentions of the officer, good or evil, are

irrelevant, *see id.* at 397, 109 S.Ct. at 1872-73, except that intent may bear on the issues of credibility or qualified immunity. *See id.* at 399 n. 12, 109 S.Ct. at 1873 n. 12. The seizure of plaintiff for mental health treatment in these circumstances was objectively reasonable. Plaintiff has not shown a violation of a constitutional right. Thus, the defendants here are entitled to qualified immunity from the Fourth Amendment claim.

### 4. Fourteenth Amendment State-Created Liberty Interest

Even if the court should consider plaintiff's claim as alleging violation of a state-created liberty interest protected by the Fourteenth Amendment, plaintiff's claim fails.[4] The Michigan Mental Health Code, MCL 330.1427, provides that an officer may take a person into protective custody in the following circumstances:

> Sec. 427.(1) If a peace officer observes an individual conducting himself or herself in a manner which causes the peace officer to reasonably believe that the individual is a person requiring treatment as defined in section [330.1401], the peace officer may take the individual into protective custody and transport the individual to a hospital for examination pursuant to section [300.1429] or may notify the community mental health emergency service unit for the purpose of requesting mental health intervention services....

See Mich. Comp. Laws Ann. § 330.1427(1) (West 1992).

The Mental health Code defines "protective custody" as the temporary custody of an individual by a peace officer with or without the individual's consent for the purpose of

---

[4]It is unclear whether the Mental Health Code even provides a cause of action for a violation of § 330.1427(1), or whether plaintiff's alleged claim should be construed as one arising under traditional tort law. State law also provides defendants with a degree of immunity from liability.

protecting that individual's health and safety, or the health and safety of the public, and for the purpose of transporting the individual if the individual appears, in the judgment of the peace officer, to be a person requiring treatment or is a person requiring treatment. Protective custody is civil in nature and is not to be construed as an arrest. See *id*. at § 330.1400(m).

Further, a "person requiring treatment" under the Mental Health Code includes [a] person who is mentally ill, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself or another person, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation. *See id.* at § 330.1401(a).

The Michigan Mental Health Code therefore required the officers to exercise their judgment by acting only upon a reasonable belief that plaintiff required treatment because he could be expected to injure himself seriously in the near future. Accordingly, the officers complied with §330.1427(1) for the same reasons that they complied with the probable cause requirement of the Fourth Amendment. See *Monday v.Oullette*, 118 F.3d 1009, 1103 (6th Cir. 1997).

### 5. Alleged Substantive Due Process Violation

Plaintiff also claims that defendants made false statements to the staff at Hurley and that their overall conduct violated his right to substantive due process. Plaintiff must show conduct that "shocks the conscience" in order to prevail on his substantive due process claim. *See United States v. Budd,* 496 F.3d 517, 529 (6th Cir.2007). To shock the conscience, conduct must have been "so brutal and offensive that it did not comport with traditional ideas of fair play and

decency." *Breithaupt v. Abram,* 352 U.S. 432, 435, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957) (quoted in *County of Sacramento v. Lewis,* 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).  In this case, plaintiff cannot demonstrate any "conscience-shocking" conduct.  Defendants reported what they observed and what they heard in the context of attempting to get plaintiff mental health treatment.  Plaintiff concedes that he was a person requiring treatment, but denied he held his family hostage despite the weapons in the home and denial of entry to the officers initially.  He admitted that he whistled for dogs but denied he said that he intended them to maul Ofc. Russ.  Plaintiff's allegations that defendants had made false statements is not supported by any evidence, and none of the allegations establish a violation of any clearly established right.  Even if the alleged statements in this case are false, they are not so egregious or distorted as to "shock the conscience."  Since defendants did not violate plaintiff's constitutional rights, our inquiry is at an end.  Defendants are entitled to qualified immunity.  See, *Simon v. Cook*, 261 Fed.Appx. 873, 879-881 (6th Cir. 2008).

Accordingly, it is recommended that the defendants' motion be granted and that they be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

     Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                                                        S/Virginia M. Morgan
                                                        Virginia M. Morgan
                                                        United States Magistrate Judge

Dated: June 11, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on June 11, 2009.

                                                        s/Jane Johnson
                                                        Case Manager to
                                                       Magistrate Judge Virginia M. Morgan