UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY WISE,

        Plaintiff,

                                            Case No. 07-CV-15479
vs.                                    HON. GEORGE CARAM STEEH

ANDREW RYAN WILBURN, et al.,

        Defendants.

_____/

ORDER ACCEPTING JUNE 11, 2009 REPORT AND RECOMMENDATION (# 114), AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (# 109)

      Plaintiff Larry Wise, appearing pro se, filed an eleven count compliant on December 27, 2007, alleging federal § 1983 claims and state claims against defendants Argentine Township Police Officers Andrew Wilburn and Terry VanKeuren, Dr. Robert Cuthbertson, Dr. Diann Krywko, and the Hurley Medical Center relative to a March 10, 2005 incident leading to Wise's involuntary commitment for mental health treatment. All pretrial matters were assigned to Magistrate Judge Virginia Morgan on January 4, 2008. Dr. Krywko was dismissed on March 7, 2008 for non-service. On January 1, 2009, the court accepted two December 10, 2008 Reports and Recommendations issued by Magistrate Judge Morgan, and granted Dr. Robert Cuthbertson's and Hurley Medical Center's motions for dismissal/summary judgment, and Officers Wilburn's and VanKeuren's motion for partial summary judgment. All that remains is Wise's § 1983 claim as alleged against Officers Wilburn and VanKeuren of an unconstitutional deprivation of his liberty interest.

      Officers Wilburn and VanKeuren filed a motion for summary judgment of the remaining claim on February 24, 2009. Magistrate Judge Morgan issued a June 11, 2009

Report and Recommendation recommending that the Officers' motion for summary judgment be granted based on qualified immunity because it is beyond reasonable dispute that the Officers had probable cause to seize Wise for mental health purposes, and the seizure was objectively reasonable under the circumstances. Wise filed timely objections on June 23, 2009.

"A judge of the court shall make a de novo determination of those portions of a report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636 (b)(1)(C). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." Id.

Consistent with the Fourth Amendment, police officers may lawfully seize a person within his home without a warrant and detain him for psychiatric evaluation on finding probable cause to believe that the individual poses a "probability or substantial chance" of dangerous behavior to himself or others. Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir. 1997). Under the Fourteenth Amendment Due Process Clause, police officers may lawfully seize a person without a warrant for purposes of mental health evaluation based on reasonable grounds to believe that the person is subject to seizure under the governing legal standard. Glass v. Mayas, 984 F.2d 55, 58 (1993) (quoting Villanova v. Abrams, 972 F.2d 792, 795 (7th Cir. 1992)). In Michigan, a peace officer make take a person into protective custody without a warrant if the officer observes the person "conducting himself or herself in a manner that causes the peace officer to reasonably believe that the individual is a person requiring treatment," that is, an individual "who as a result of . . . mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation." M.C.L. § 330.1427(1); M.C.L. § 330.1401(1)(a). Wise's legal objection that

2

he enjoyed an absolute constitutional right not to be seized within his home without a warrant for purposes of mental health evaluation is without merit.

In resolving the issue of qualified immunity on summary judgment, courts are required to engage in a two-step decisional process: (1) whether the plaintiff has shown sufficient facts to make out a violation of a constitutional right; and (2) whether the constitutional right was "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 129 S.Ct. 808, 815-16 (2009) (citing Saucier v. Katz, 533 U.S. 194, 121 (2001)). A district court enjoys "discretion in deciding which if the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id at 818. Magistrate Judge Morgan found at the first stage of the analysis that Wise had failed to proffer evidence that Officers Wilburn or VanKeuren lacked probable cause to believe that Wise posed a danger to himself or others when he was seized on March 10, 2005, and therefore there was no constitutional violation. On review of the record de novo, the court agrees.

Wise advances objections to Magistrate Judge Morgan's analysis of the factual record, arguing: Lieutenant Coverdill's March 10, 2005 police report shows Wise was cooperative and had not made any indications of violence; the record shows Officer Wilburn could not have seen others inside Wise's home; police reports failed to disclose the names of two neighbors that were also inside the home with Wise, his wife, and his three children; an incident related to Attorney Bagley and his office manager was unknown to Officers at the time of the seizure; a loaded handgun inside Wise's residence was found in a "black lock case" in a bedroom closet, not in the bathroom; a Lieutenant Hernandez completed the petition for hospitalization, not Officer Wilburn; Officer Wilburn reported only in the Hospital petition that Wise was acting "aggressive" towards his family; and Dr. Krywko's

3

testimony that Wise was hospitalized for two days after the seizure for "essentially" holding his wife "hostage" was unknown to the Officers at the time of the seizure and disputed by Mrs. Wise's deposition testimony.

Lieutenant Coverdill reported in the March 10, 2005 police report that female Officer Russ apprized him of the situation when he arrived, telling him that Wise would only allow Officer Wilburn and Linden Police Officer Fulton inside the home to talk, not Officer Russ. Coverdill goes on to report that:

> After several seconds, I approached the front of the home, where myself, Wilburn, and Fulton were allowed to enter the home, and that Sgt. Russ was not allowed inside. It was determined, that due to the subject cooperating, and he had not made any indication of being violent, and not having knowledge of others in the home and their safety, or any weapons that may be accessible, that she, Russ, would remain outside.

Coverdill clearly reported that Wise was "cooperating" and "had not made any indication of being violent" to support his decision to honor Wise's demand that Sgt. Russ remain outside, well before any of the Officers had entered the home to evaluate the situation. Evidence indicating that Officer Wilburn could not have seen anyone inside the home before he entered, and that police reports did not disclose the names of two neighbors also inside the home, is simply irrelevant. Contrary to Wise's objection, the Officers were aware of the incident involving an Attorney Bagley and his staff before Wise was seized, as attested to by Officer Russ. The fact that a loaded handgun was found in its case in a bedroom closet does not diminish the probability that the Officers had probable cause to reasonably believe that Russ posed a danger to himself, his family, and his neighbors in the near future if the Officers left the residence without taking Wise into protective custody. It is undisputed that Officer Wilburn, one of the Officers that observed Wise, signed the hospitalization form after he read it for accuracy. The fact that Officer Wilburn reported in the form that Wise was acting "aggressive" towards his family does not create a factual

4

dispute whether Wise was in fact acting aggressive simply because Officer Wilburn did not use the term in his police report. While Wise's wife did not testify that she was being held "hostage" by Wise, she did testify that she talked to Attorney Bagley's assistant, Ms. Somers, on the phone on March 10, 2005, that she told Somers that she was "scared" because of "the way that Larry was acting at the time," and that Wise had told her that she should not go outside because it was "safe" inside the home.

> Q. Do you recall telling Ms. Somers that your husband was holding you in the house and would not let you leave?
>
> A. [by Mrs. Wise] I'm not sure. I don't know if I was – I don't know if I would have said it that way. It was don't go outside. . . . .

Angella Wise January 27, 2009 Deposition Transcript, at 19.

The record demonstrates that Officers were called to Wise's house by neighbors who were concerned about Wise's behavior. When Officers arrived at the home, Wise locked the entrance door and shouted out a window that "We don't need you here!" Wise talked to the Officers through a window and told the Officers that the people inside were okay. Wise told Officer Wilburn that the people inside would be safe from God's coming wrath. As corroborated by Wise's wife, once the Officers were inside, Wise told Officer Wilburn that he could summon 100 dogs to come to his aid.

> Q. There's been testimony that your husband was going to whistle and dogs were going to come maul one or both of the officers. Did you hear that?
>
> A. [by Mrs. Wise] Not those words. He was whistling for the dogs, and he asked me to get him a glass of water, and what are you doing, and he said I am whistling for the dogs. That was weird, and he didn't say maul them, attack them, bite them, eat them.
>
> Q. What did he say?
>
> A. He was whistling. They asked what he was doing. He said I am whistling for 100 dogs, and I got a little worried that they might think he was whistling for our [two] dogs. So I ran them downstairs and put them in a storage room so that there wouldn't be any, you know, mistake or anything.

5

Angella Wise January 27, 2009 Deposition Transcript, at 22-23.  Mrs. Wise admitted she felt afraid and scared of her husband that day, and that she recalled that Wise was alternating between getting loud and agitated with the Officers, and then being calm.  Id. at 30.  Wise's attorney Munger told Officer Russ on the phone that Wise was getting more unstable each day, that he was concerned for Wise and the family's safety, and that he believed Wise was capable of harming himself or his family.  In addition to finding a loaded handgun in the home, Officers also found .357 Magnum ammunition.

From this and other evidence in the record, reasonable jurors could not dispute that the Officers had probable cause to believe that Wise posed a "probability or substantial chance" of dangerous behavior to himself and his family, as well as reasonable grounds to believe Wise was subject to seizure under M.C.L. § 330.1427(1) and M.C.L. § 330.1401(1)(a).  Monday, 118 F.3d at 1102; Glass, 984 F.2d at 58.  Accordingly,

Plaintiff Wise's objections are OVERRULED.  The court hereby ACCEPTS the June 11, 2009 Report and Recommendation as its own.  Defendants' motion for summary judgment is hereby GRANTED.  Plaintiff Wise's claims are hereby DISMISSED with prejudice.

SO ORDERED.

Dated:  July 20, 2009

> s/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 20, 2009, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk